ELECTRONICALLY FILED
2015-Feb-05 10:48:20
60CV-15-409
C06D06 : 14 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
### CIVIL DIVISION

| | | |
|---|---|---|
| **LESLIE EPPS and WILLIAM EPPS,** | ) | Case No.: |
| **individually and on behalf of** | ) | |
| **all others similarly situated,** | ) | |
| | ) | Judge: |
| *Plaintiffs,* | ) | |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **WAL-MART STORES, INC.,** | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

### CLASS-ACTION COMPLAINT

Plaintiffs Leslie Epps ("Ms. Epps") and William Epps ("Mr. Epps"), by and

through the undersigned counsel, bring this class action on behalf of themselves and all

others similarly situated. For their Complaint against Defendant Wal-Mart Stores, Inc.,

Plaintiffs state and allege as follows:

#### INTRODUCTION

1.     This case arises from Defendant's pattern and practice of overcharging its

customers at Walmart Vision Centers and Sam's Club Optical stores by obtaining

double payment from the customers and their insurers for the same charges.  In doing

so, Defendant wrongfully collects insurance payments that legally inure to the benefit of

its customers.

1



2.     Like many other medical providers, Walmart Vision Centers and Sam's
Club Optical stores accept insurance to defray their patients' out-of-pocket cost. The
insurer pays the amount agreed to in the insurance contract, and the insured pays the
balance. The payments made by the insurer are for the benefit of the insured, as
otherwise the insured would be responsible for paying the full charges for goods and
services. Accordingly, when it collects payments from a patient's insurer, Defendant is
obligated to charge the patient a reduced amount that reflects the insurance benefit.
Otherwise, Defendant is overcharging the insured, collecting double payment for the
same services, and pocketing the insured's insurance benefit for itself. That is exactly
what is happening here.

3.     As exhibited herein, Defendant, through its Walmart Vision Centers and
Sam's Club Optical stores, has a policy and practice of invoicing its customers for direct
payment amounts that do not reflect insurance benefits and of failing to reimburse
patients for such overcharges once Defendant receives the insurance benefits from
patients' insurers. Through this policy and practice, Defendant is unjustly enriched,
converts insureds' property, and violates the Arkansas Deceptive Trade Practices Act.

4.     Plaintiffs seek recovery of the insurance monies wrongfully withheld—the
amount Defendant overcharged its customers—on behalf of a class of similarly situated
individuals.

2

## JURISDICTION AND VENUE

5.      Jurisdiction is appropriate in this Court as a court of general jurisdiction.

6.      This action is not removable to federal court, as the parties are non-diverse. Moreover, this action does not satisfy the requirements for removal under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

7.      Venue is proper pursuant to Ark. Code Ann. § 16-55-213.

## PARTIES

8.      Plaintiff Leslie Epps is a resident of Pulaski County, Arkansas.

9.      Plaintiff William Epps is a resident of Pulaski County, Arkansas, and is the husband of Plaintiff Leslie Epps.

10.      Defendant Wal-Mart Stores, Inc., is incorporated in the State of Delaware and has its principal place of business in Bentonville, Arkansas. In 2013, it owned approximately 2,657 Walmart Vision Center locations and approximately 545 Sam's Club Optical locations.

## FACTS

11.      During all periods relevant to the current lawsuit, Plaintiffs had vision insurance through Delta Dental and its DeltaVision Plan 976 (the "Plan"). The Plan administrator was Avesis Third Party Administrators, Inc. ("Avesis"). Plaintiffs have remained current on their Plan premiums.

12. After a co-pay, the Plan covers vision examinations, frames, and certain categories of lenses in full if the beneficiary uses an in-network provider. For progressive lenses purchased from an in-network provider, the Plan specifies that it will cover "up to 20% off retail, plus a $50 allowance." A copy of Plaintiffs' Plan is attached to this Complaint as Exhibit A.

13. On April 12, 2013, Ms. Epps visited Wal-Mart Vision Center #24, located at 2000 John Harden Drive in Jacksonville, Arkansas. Wal-Mart Vision Center #24 was an in-network provider for the Plan. Defendant owns and operates Wal-Mart Vision Center #24.

14. At Wal-Mart Vision Center #24, Ms. Epps purchased a pair of progressive lenses with anti-reflective coating. Ms. Epps was charged as follows: two charges of $112.50 for "Zeiss Poly"; two charges of $5 for "Roll Polish"; and $10 for a "Lens Procfee." The total of these purchases was $245 before tax. A copy of the receipt from this transaction is attached to this Complaint as Exhibit B.

15. Upon billing, Ms. Epps presented an insurance card showing her enrollment in the Plan. Wal-Mart Vision Center #24 applied her benefits to provide a $25 after-tax discount, thus bringing the final total of her purchase to $242.05. *See* Exhibit B.

16. Believing that the Plan entitled her to greater benefits than Wal-Mart Vision Center #24 applied, Ms. Epps contacted Avesis for an explanation of benefits.

4

After some delay, Avesis supplied an explanation of benefits showing that Wal-Mart submitted a claim of $245.75 to Avesis—75 cents more than the full amount of Ms. Epps's purchase prior to taxes. The claim was split into six categories: 75 cents for "Frame"; $50 for "Progressive Lens"; $125 for "POLYCARB – Aspheric"; $50 for "Standard AR"; $10 for "RIMLESS GROOVE"; and $10 for "Frame Dispensing." The explanation of benefits shows that Avesis forwarded $80 to Defendant in satisfaction of its claim: $50 for "Progressive Lenses" and $30 for "POLYCARB – Aspheric." A copy of this explanation of benefits is attached to this Complaint as Exhibit C.

17.     Defendant received $80 in benefit payments from Avesis but credited only $25 of those benefit payments to Ms. Epps. Accordingly, Defendant overcharged Ms. Epps $55 by failing to reflect the insurance benefit in its invoice directly to her and by failing to reimburse her for that overcharge once it received the insurance benefit. In short, Defendant overcharged Ms. Epps $55 and pocketed her insurance benefit for itself.

18.     Ms. Epps submitted a complaint form to Defendant through Defendant's website. In the complaint form, Ms. Epps explained that Avesis sent $80 to Defendant and that an additional $55 should have been deducted from her purchase. Defendant never responded to Ms. Epps's complaint. Nor did Defendant otherwise contact Ms. Epps or return the $55 in overcharges.

5

19.     Ms. Epps's experience is not an isolated incident. On January 3, 2011, Mr.
Epps also visited Wal-Mart Vision Center #24 and purchased glasses with progressive
lenses and anti-reflective coating. Mr. Epps was charged $58 for "Mens Opt Frm" and
two charges of $89.50 for "Lens." The total of these purchases was $237 before tax. A
copy of the receipt from this transaction is attached to this Complaint as Exhibit D.

20.     Upon billing, Mr. Epps presented an insurance card showing his
enrollment in the Plan. Wal-Mart Vision Center #24 applied his benefits to provide a $72
after-tax discount, thus bringing the final total of his purchase to $186.33. *See* Exhibit D.

21.     Ms. Epps asked for an explanation of benefits connected to her husband's
transaction at the same time she requested her own explanation of benefits. The
explanation of benefits shows that Wal-Mart submitted a claim of $237 to Avesis—the
full amount of Mr. Epps's purchase. The claim was split into four categories: $58 for
"Frame"; $80 for "Progressive Lens"; $49 for "POLYCARB – Aspheric"; and $50 for
"Standard AR." The explanation of benefits shows that Avesis forwarded $107 to
Defendant in satisfaction of its claim: $27 for "Frame"; $50 for "Progressive Lenses" and
$30 for "POLYCARB – Aspheric." A copy of this explanation of benefits is attached to
this Complaint as Exhibit E.

22.     Defendant received $107 in benefit payments from Avesis but credited
only $72 of those benefit payments to Mr. Epps. Accordingly, Defendant overcharged
Mr. Epps $35 by failing to reflect the insurance benefit in its invoice directly to him and

6

by failing to reimburse him for that overcharge once it received the insurance benefit. In

short, Defendant overcharged Mr. Epps $35 and pocketed his insurance benefit for

itself.

## CLASS-ACTION ALLEGATIONS

23.     Plaintiffs bring this action on their own behalf and on behalf of a class of

all other persons similarly situated (the "Class"), pursuant to Rule 23 of the Arkansas

Rules of Civil Procedure.

24.     This action satisfies the numerosity, commonality, typicality, adequacy,

predominance, and superiority requirements of Arkansas Rules of Civil Procedure 23(a)

and (b).

25.     Plaintiffs seek certification of the following Class:

> All individuals who, from February 5, 2010, through the date
> of resolution of this action, (1) were covered by an insurance
> plan; (2) presented the plan's insurance card to cover goods
> or services purchased from a Walmart Vision Center or
> Sam's Club Optical store; and (3) were not credited with or
> reimbursed for benefits in an amount equal to benefits paid
> from the insurance plan to Defendant for the purchase.

26.     Plaintiffs reserve the right to modify or amend the definition of the

proposed Class before the Court determines whether certification is proper.

27.     Excluded from the Class are Defendant, any parent, subsidiary, affiliate,

or controlled person of Defendant, as well as the officers, directors, agents, servants, or

employees of Defendant and the immediate family members of any such person. Also

7

excluded are any judge who may preside over this cause of action and any attorneys representing Plaintiffs or the Class.

28. The exact number of the Class, as herein identified and described, is unknown but is estimated to number in the thousands. The Class is so numerous that joinder of individual members herein is impracticable. The identity of Class members is ascertainable through Defendant's records kept in the ordinary course of business.

29. There are questions of law and fact that are common to each member of the Class and that predominate over questions affecting any individual Class member. In particular, the common questions of fact and law include:

(A) Whether Defendant failed to credit Plaintiffs and the Class members for the full amount of their insurance benefits;

(B) Whether Defendant received and retained payments from insurers in excess of the credits that it provided Plaintiffs and the Class members for covered goods and services;

(C) Whether Defendant violated the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. 4-88-101 *et seq.*, by retaining monies that should have been credited to Plaintiffs and the Class members;

(D) Whether Defendant converted Plaintiffs' and the Class members' property; and

8

(E)     Whether Defendant was unjustly enriched by retaining monies that should have been credited to Plaintiffs and the Class members.

30.     Plaintiffs are representative of the Class and their claims are typical of the claims of the proposed Class, in that the claims of all members of the proposed Class, including Plaintiffs', depend on showing that Defendant's acts gave rise to the right to relief sought herein. There is no conflict between the individually named Plaintiffs and other members of the proposed Class with respect to this action or with respect to the claims for relief set forth herein.

31.     As the representative party for the Class, Plaintiffs are able to and will fairly and adequately protect the interests of the Class. The attorneys for Plaintiffs and the Class are experienced and capable in complex civil litigation and class actions.

32.     The class-action procedure is superior to all other available methods for the fair and efficient adjudication of this controversy. This action would permit a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence and effort. Class treatment also would permit the adjudication of claims by Class members whose claims are too small and complex to individually litigate against a large corporate defendant.

## COUNT I
## Violation of the Arkansas Deceptive Trade Practices Act

33.     Plaintiffs hereby repeat and reallege all preceding paragraphs contained herein.

34.     As a routine business practice, Defendant receives and retains monies from insurers that should be credited to Plaintiffs and the Class members. Rather than giving Plaintiffs and the Class members full credit for the benefits to which they were entitled under their insurance plans, Defendant gives Plaintiffs partial credit, overcharges them, and retains excess benefits that the insurers pay.

35.     By overcharging Plaintiffs and the Class members and failing to provide them with full credit for insurance benefits that are rightfully theirs and profiting thereby, Defendant has engaged in an unconscionable, false, and deceptive practice in commerce, in violation of Ark. Code Ann. § 4-88-107(a)(10).

36.     Plaintiffs and Class members were harmed by Defendant's unconscionable, false, and deceptive trade practice. Specifically, Defendant's actions caused them not to receive the full value of insurance benefits that were rightfully theirs.

## COUNT II
## Conversion

37.     Plaintiffs hereby repeat and reallege all preceding paragraphs contained herein.

10

38.     Proceeds from Plaintiffs' and the Class members' insurance plans were to be paid for Plaintiffs' and the Class members' benefit and were rightfully Plaintiffs' and the Class members' property.

39.     Defendant intentionally exercised control over this property in defiance of Plaintiffs' and the Class members' rights when, pursuant to its business practice and policy, it retained payments from Plaintiffs' and the Class members' insurers in excess of the amount that Defendant credited Plaintiffs and the Class members when they purchased items covered under their insurance plans.

40.     Defendant intends to permanently deprive Plaintiffs and the Class members of these funds.

41.     Plaintiffs and the Class members are entitled to the immediate possession of these funds.

42.     Defendant has wrongfully converted and continues to wrongfully convert these specific and readily identifiable funds.

43.     As a direct result of Defendant's wrongful conversion, Plaintiffs and the Class members sustained damages in an amount equal to the difference between the payments Defendant received from Plaintiffs' and the Class members' insurers and the amount Defendant credited Plaintiffs and the Class members at the time of their purchases.

11

COUNT III
**Unjust Enrichment**

44.     Plaintiffs hereby repeat and reallege all preceding paragraphs contained herein.

45.     Plaintiffs and the Class members conferred a benefit upon Defendant. Specifically, they paid Defendant money for goods and services that Defendant represented were not covered under their insurance plans.

46.     Defendant received payments from insurers that were intended for the benefit of Plaintiffs and the Class members. Defendant did not credit Plaintiffs and the Class members for these payments. Rather, Defendant retained them for its own benefit.

47.     Defendant was thereby enriched. Specifically, it retained the difference between the payments it received from Plaintiffs' and the Class members' insurers and the amount it credited Plaintiffs and the Class members at the time of their purchases.

48.     It would be inequitable and unjust for Defendant to retain these monies. These monies were intended for the benefit of Plaintiffs and the Class members under the terms of their insurance plans. Moreover, Defendant was in a superior position to apply insurance benefits correctly and to reimburse Plaintiffs and the Class members if it failed to do so.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request judgment as follows:

a) Determining that this action may be maintained as a class action under Rule 23 of the Arkansas Rules of Civil Procedure;

b) Declaring that Defendant's practice of receiving and retaining Plaintiffs' and the Class members' insurance benefits for its own profit violates the Arkansas Deceptive Trade Practices Act;

c) Declaring that Defendant converted funds that rightfully belonged to Plaintiffs and the Class members;

d) Declaring that Defendant was unjustly enriched by receiving and retaining Plaintiffs' and the Class members' insurance benefits for its own profit;

e) Permanently enjoining Defendant from failing to credit patients for the full amount of their insurance benefits and from retaining portions of those benefits for itself;

f) Ordering damages in the form of monetary restitution to Plaintiffs and all the Class members of 100% of the insurance benefits Defendant retained in excess of insurance payments already credited to Plaintiffs and the Class members, plus pre-judgment and post-judgment interest;

g) Awarding attorney's fees and costs; and

13

h)      Granting such other legal and equitable relief as the Court may

deem appropriate.

## JURY DEMAND

Plaintiffs and the Class members hereby request a trial by jury.

Dated: February 5, 2015                     Respectfully submitted,

Hank Bates (ABN 98063)
Allen Carney (ABN 94122)
John C. Williams (ABN 2013233)
**CARNEY BATES & PULLIAM, PLLC**
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
Tel: (501) 312-8500
Fax: (501) 312-8505

*Counsel for Plaintiffs and the Proposed Class*

ELECTRONICALLY FILED
2015-Feb-05  10:48:20
60CV-15-409
C06D06 : 17 Pages

# EXHIBIT A



## OUTLINE OF COVERAGE

Congratulations! We are pleased that you selected Delta Dental of Arkansas (DDAR) for your vision coverage. DDAR is a leader in dental and vision care – both in Arkansas and in the nation.

READ YOUR POLICY CAREFULLY. This outline of coverage provides you a very brief description of the important features of your POLICY. The outline is not your POLICY and only the actual POLICY provisions will control. The POLICY itself sets forth in detail the rights and obligations of both you and DDAR. It is therefore, important that you read this carefully.

VISION EXPENSE COVERAGE. Policies of this category are designed to provide to person insured, coverage for vision expenses. Coverage is provided for a vision examination and vision materials.

## VISION BENEFITS

### CO-PAYS:
Is the amount the participant must pay for services in any policy year before benefits will be paid, subject to limitations shown on the Schedule Of Benefits.

### COVERED SERVICES:
- Vision Exam – One exam in every twelve (12) months.
- Spectacle Lenses - Up to two lenses provided one time in every twelve (12) months.
- Frame - One frame provided one time in every twenty-four (24) months.
- Contact Lens Allowance - Contact lenses benefit provided in lieu of lenses and/or frame one time in every twelve (12) months.

### PLAN ALLOWANCES:
**Frame** - The amount the plan will allow for frames, any amount over the allowance is the patient's responsibility.
**Contact Lenses** - The amount the plan will allow for materials and services.

### AGE LIMITATIONS:
DDAR will cover single dependent children to the end of the month in which they turn 19. It is the responsibility of the POLICY HOLDER to terminate the coverage of an eligible dependent child when they reach the 19th Birthday, DDAR does not automatically terminate the coverage.

### SPECIAL LIMITATIONS:
**Vision Examination and Vision Materials** - Fees charged by a Provider for services other than Vision Examination or covered Vision Materials must be paid in full by the Covered Person to the Provider. Such fees or materials are not covered under this Policy.

Benefit allowances provide no remaining balance for future use within the same Benefit Period, except for Contact Lenses benefit.

### BENEFITS AND SERVICES NOT COVERED UNDER THIS POLICY
Benefits or services for injuries or conditions covered under Worker's Compensation or Employer's Liability laws. Benefits or services available from any federal or state government agency; municipality, county, other

political subdivision; or community agency; or from any foundation or similar entity. Charges for services or supplies for which no charge is made that the patient is legally obligated to pay. Charges for which no charge would be made in the absence of vision coverage. Charges for services by other than a provider. Charges by a preferred provider for the completion of forms and/or submission of supportive documentation required by DDAR for a benefit determination. Fees charged by a Provider for services other than covered Vision Examination or covered Vision Materials must be paid in full by the Covered Person to the Provider. Such fees or materials are not covered under this Policy. Benefits for services or materials started prior to the date the patient became eligible under this plan. Orthoptic or vision training, subnormal vision aids, and any associated supplemental testing; Aniseikonic lenses. Medical and/or surgical treatment of the eye, eyes, or supporting structures. Any vision examination or any corrective eyewear required by an Employer as a condition of employment and safety eyewear, unless specifically covered under the Policy. Plano (non-prescription) lenses. Non-prescription sunglasses. Two pair of glasses in lieu of bifocals. Lost or broken lenses, frames, glasses, or contact lenses will not be replaced except in the next Benefit Period when Vision Materials would next become available. Charges for services when a claim is received for payment more than twelve (12) months after services are rendered. Specialized techniques that entail procedure and process over and above that which is normally adequate. Any additional fee is the patient's responsibility. Those services and benefits excluded by the rules and regulations of DDAR, including DDAR's processing policies. Procedures that do not comply with DDAR's guidelines. All other benefits and services not specifically covered in the Contract and/or Schedule of Benefits.

### NETWORK:
Under your DDAR program, you may seek services from any Provider you choose. However, Individuals will receive a **higher level of BENEFITS by seeking care from a Preferred Provider.**

### How do I select a Provider?
The easiest and most accurate listing of Preferred Provider's is on the DDAR website, www.deltadentalar.com. Click on our Vision link. Once at the web page, select the "Searching for a Provider" icon.

This POLICY contains a summary in English of your plan rights and BENEFITS. If you have trouble understanding any part of this POLICY, contact DDAR's Customer Service Department at (800) 462-5410. Office hours are from 7:30 a.m. to 7:00 p.m. C.S.T., Monday through Friday.

Thank you for selecting Delta Dental of Arkansas. We look forward to serving you.

POLICY – Individual Vision
April 2008
Form No. DDARIN-17



### DeltaVision
### LIMITED BENEFIT POLICY
### INDIVIDUAL VISION

This Individual POLICY gives your rights and duties as a Covered Person. Please read your POLICY carefully and be familiar with its terms.

This policy is issued on the basis of your APPLICATION and payment of the required PREMIUM. The coverage set out in this POLICY is offered upon the terms and conditions set out within. This includes all schedules, endorsements, applications, and amendments. Delta Dental of Arkansas, (DDAR) has caused this POLICY to be duly executed as of the service date confirmed by notice.

The policy takes effect on the date specified and will be continued in force by timely payment of the Premiums when due. The policy is subject to termination as provided. All coverage under the policy will be effective at 12:01 a.m. and will end at 12:00 midnight C.S.T.

This POLICY is delivered in the State of Arkansas and is governed by the laws of the State of Arkansas.

This POLICY and riders are guaranteed renewable as long as you reside in Arkansas. DDAR may change the established premium rate and covered benefits, but only if the rate is changed for all policies and riders for the same form number and premium classification.

We are giving you this POLICY that will explain the coverage and services provided under your vision plan. If after examination of your POLICY, you are not satisfied with any of its terms or conditions, you may return it to DDAR within thirty (30) days of its delivery to you and receive a full refund of all premiums.

DELTA DENTAL OF ARKANSAS

BY: *Ed Chrate*

President

**Any person who knowingly presents a false or fraudulent CLAIM for payment of a loss or benefit or knowingly presents false information in an APPLICATION for insurance is guilty of a crime and may be subject to fines and confinement in prison.**

POLICY – Individual Vision
April 2008
Form No  DDARIN-17

## TABLE OF CONTENTS:

- ❖ Schedule of Benefits

- ❖ Statement of Coverage

- ❖ Definitions

- ❖ Eligibility and Enrollment

- ❖ Exclusions for all Benefits

- ❖ Claims Procedures

- ❖ Privacy Policy

- ❖ General Provisions

- ❖ Notice of Administrator's Capacity

POLICY – Individual Vision
April 2008
Form No   DDARIN-17

# △ DELTA DENTAL®

# Avesis

# DeltaVision Plan 976

## DeltaVision

You can join millions of people who use Avesis to meet their vision care needs. This program has been specifically designed to provide your employees and their family members with quality, professional vision care, all at a tremendous savings to you!

## In-Network Vision Benefits

**Vision Examination**
**Frame** (within plan allowance)
**Spectacle Lenses**
Standard Single Vision
Standard Bifocal
Standard Trifocal
Standard Lenticular
**Contact Lenses**
Elective (up to plan allowance)
Medically Necessary (prior authorization required)

Covered
in Full

After Co-Pay(s)

No Co-Pays for
Contacts

---

Progressive lenses - up to 20% off retail, plus a $50 allowance
Specialty lenses - up to 20% off retail, plus the corresponding standard lens payment

---

Lens Options[1]
Laser Vision Correction[2]
Additional Purchases[3]

Discounted
Items*

## Benefit Frequency



Every 12 Months
Every 12 Months
Every 24 Months
Every 12 Months

---

\* Not insured benefits
1  up to 20% off on all lens options
2  5% - 25% off on laser vision correction
3  up to 20% off on all additional purchases or items not covered

## Plan Allowances

**FRAME**
Members receive any frame with an approximate retail value between **$75 - $100** (up to a $35 wholesale allowance)
Frames from participating Wal-Mart locations are covered up to a $52 retail value.

**CONTACT LENSES**
(In lieu of spectacle lenses and frames)
Members receive a contact lens allowance of **$110** which can be used for materials and services.

## Co-pays

| | |
|---|---|
| **Vision Examination** | **$10.00** |
| **Materials** | **$25.00** |

## Out-of-Network Reimbursement



| Spectacle Lenses | | Contact Lenses | |
|---|---|---|---|
| Standard Single Vision | $25.00 | Elective | $110.00 |
| Standard Bifocal | $40.00 | Medically Necessary | $250.00 |
| Standard Trifocal | $50.00 | | |
| Standard Lenticular | $80.00 | | |
| Progressive | $40.00 | | |
| Specialty Lenses | Corresponding Standard Lens Reimbursement | | |

All reimbursement amounts listed above are up to the posted dollar amount.

# How To Use Your Benefits

When you need to see an eye care professional, simply call DeltaVision, Monday through Friday, 8AM to 6PM (CST) at 1-866-909-1082 or visit www.deltadentalar.com and follow the links. DeltaVision Customer Service Representatives have the most current listing of participating providers

① Select a participating provider
② Call and identify yourself as a DeltaVision/Avesis member
③ Schedule an appointment
④ Present your ID Card and pay any co-pays and expenses not covered under the vision program

### LOOKING FOR A LASIK PROVIDER?

Avesis has contracted with participating providers to provide significant discounts for LASIK surgery. You may call 1-888-314-4619 for additional information or to locate a participating provider in your area.

### Out-of-Network Information

Members who elect to use an out-of-network provider must pay the provider in full at the time of service and submit a claim to DeltaVision for reimbursement. Reimbursement levels are in accordance with the out-of-network reimbursement schedule previously listed. Out-of-network benefits are subject to the same eligibility, availability, frequency of benefits, and limitation and exclusion provisions of the plan; and are in lieu of services provided by a participating DeltaVision provider. Out-of network claim forms can be obtained by contacting DeltaVision's Customer Service Center, your group administrator or by visiting www.deltadentalar.com.

**Limitations:** This plan is designed to cover eye examinations and corrective eyewear. It is also designed to cover visual needs rather than cosmetic options. Should the member select options that are not covered under the plan, as shown in the schedule of benefits, the member will pay a discounted fee to the participating DeltaVision provider. Benefits are payable only for services received while the group and individual member's coverage is in force.

**Exclusions:** There are no benefits under the plan for professional services or materials connected with and arising from: 1) Orthoptics of vision training; 2) Subnormal vision aids and any supplemental testing; 3) Plano (nonprescription) lenses, sunglasses; 4) Two pair of glasses in lieu of bifocal lenses; 5) Any medical or surgical treatment of eye or support structures; 6) Replacement of lost or broken lenses, contact lenses or frames, except when the member is normally eligible for services; 7) Any eye examination or corrective eyewear required by an employer as a condition of employment; 8) Services or materials provided as a result of Workers Compensation Law, or similar legislation, required by any governmental agency whether Federal, State or subdivision thereof.

**Notes and Disclaimers:** Dilation is covered in full based on the following conditions: central vision loss, photopsia, floaters, history of ocular surgery, history of ocular trauma, history of ocular disease high myopia or diabetes. If the following conditions do not apply, members will receive DeltaVision's Preferred Pricing (20% off retail).

The contact lens allowance may be used all at once or throughout the plan year as needed or may be applied toward contact lenses only, or both contact lenses and professional services (fitting fees).

Laser vision correction is considered Refractive Surgery, an elective procedure, and may involve potential risks to patients. Delta Dental is not responsible for the outcome of any refractive surgery.

Only one co-pay applies to either frame or lenses.

**Termination Provisions:** Coverage will end on the earliest of: the date the policy ends, the date the employee's employment ends, or the date the employee is no longer eligible.

37

## STATEMENT OF COVERAGE

This POLICY contains insurance benefits provided by Delta Dental of Arkansas to you and is subject to its terms.

Payment for vision services will be made in accordance with this POLICY. Only those services listed in the POLICY and for the individual listed on the application and for whom premium has been paid are covered.

This POLICY is most effective and advantageous when the services of PREFERRED PROVIDER are used.

The effective date of the POLICY is indicated on your SCHEDULE OF BENEFITS.

Continuance of coverage under this POLICY shall be contingent upon receipt of your monthly or annual premium.

Under this POLICY, notice is effectively delivered when it is mailed to the POLICY HOLDER'S most recent address as recorded in our records.

Delta Dental of Arkansas reserves the right to amend the premiums required for this POLICY. If this right is exercised, DDAR will give at least thirty (30) days written notice to the POLICY HOLDER and the change will go into effect on the date indicated in the notice.

No agent or employee of Delta Dental of Arkansas may change or modify any benefit, term, condition, limitation or exclusion of the POLICY. Any change or amendment must be in writing and signed by an Officer of Delta Dental of Arkansas.

**Benefit Period for Vision Examination** is shown in the Schedule of Benefits and begins on the Covered Person's Effective Date.

**Benefit Period for Vision Materials** is shown in the Schedule of Benefits and begins on the Covered Person's Effective Date.

**Vision Materials Benefit** - If a Vision Examination results in a Covered Person needing corrective Vision Materials for their visual health and welfare, those Vision Materials prescribed by Providers will be supplied, subject to certain limitations and exclusions of the Policy, as follows:
- Lenses - Up to two lenses provided one time in each successive Benefit Period.
- Frame - One frame provided one time in each successive Benefit Period.
- Contact Lenses - Contact lenses benefit provided in lieu of lenses and/or frame.

### DEFINITIONS
The following terms have specific meaning as used in the Policy.

**Claims Administrator** means Avesis Incorporated.

**Covered Person** means an individual meeting the eligibility requirements of the Policy who is covered for benefits. Covered Person will also include Your Dependents, if enrolled.

**Dependent** means any of the following persons: 1) Your lawful spouse; 2) Each unmarried child from birth to age 19 who is primarily dependent upon You for support and maintenance; 3) Each unmarried child at least 19 years of age to age 23 who is primarily dependent upon You for support and maintenance and who is a full-time student.   Full time is twelve (12) hours for an undergraduate student and nine (9) hours for a graduate school student per semester; or 4) Each unmarried child who is primarily dependent upon You for support and maintenance because the child is incapable of self-sustaining employment by reason of mental incapacity or physical handicap; who was so incapacitated and is a Covered Person under this Certificate on his or her 19th birthday; and who has been continuously so incapacitated since his or her 19th birthday.   The term "child" means a) a natural born child, b) a stepchild who resides in the ELIGIBLE Individual's household, c) an adopted child (from the date of placement of the ELIGIBLE INDIVIDUAL for the purpose of legal adoption), d) a child for whom the ELIGIBLE INDIVIDUAL is the legal guardian, or e) a child for whom the ELIGIBLE INDIVIDUAL is legally required to provide medical coverage.

**Eligible Dependent** means a DEPENDENT who meets the eligibility requirements as set forth in the eligibility and enrollment section below.

**Eligible Individual** means an INDIVIDUAL who meets the eligibility requirements as set forth in the eligibility and enrollment section below.

**Non-Preferred Provider** means a Provider, located within the PPO Service Area, who has not signed a Preferred Agreement with the PPO.

**Policy** means the Policy issued to the Policyholder.

**Preferred Agreement** means an agreement between the PPO and a Provider concerning the rates and reimbursement methods for services and supplies provided by such Provider.

**Preferred Provider** means a Provider who has signed a Preferred Agreement with the PPO.

**Preferred Provider Organization (PPO)** means a network of Providers and retail chain stores within the PPO Service Area who have signed Preferred Agreements with Avesis.

**PPO Service Area** means the geographical area where the PPO is located.

**Provider** means a licensed physician or optometrist who is operating within the scope of his or her license or a dispensing optician.

**Vision Examination** means a comprehensive ophthalmological service as defined in the Current Procedural Technology (CPT) and the Documentation Guidelines listed under "Eyes-examination items".   Comprehensive ophthalmological service describes a general evaluation of the complete visual system.   The comprehensive services constitute a single service entity but need not be performed at one session.   The service includes history, general medical observation, external and ophthalmoscopic examinations, gross visual fields and basic sensorimotor examination.   It often includes, as indicated by examination:   biomicroscopy, examination with cyclopedia or mydriasis and tonometry.   It always includes initiation of non-medical diagnostic and non-medical treatment programs.

**Vision Materials** means corrective lenses and/or frames or contact lenses.

**We, Our, Us** means Delta Dental of Arkansas.

**You, Your, Yours** means the individual covered under the Policy.

## ELIGIBILITY AND ENROLLMENT

**Eligible Individual.** Any person who applies for coverage in the vision plan upon whom premiums have been paid and his eligible dependents, if any, for whom premiums have been paid. Eligible individuals and their eligible dependents will be eligible to enroll for coverage on the first day of the calendar month after they have completed an application and premium is paid.

Eligible dependents include a legally married spouse (not legally separated) and each unmarried dependent child up to their nineteenth (19) birthday. Such dependent must be a resident of the United States. The dependent child must be primarily dependent upon the eligible individual, which means that dependent child must depend upon the eligible individual for support and maintenance as defined by code section 152 and the eligible individual must declare the dependent child as an income tax deduction. Under certain circumstances, the eligible individual may be required to provide DDAR with proof of dependency.

The term child means a) a natural born child, b) a stepchild who resides in the eligible individual's household, c) an adopted child (from the date of placement of the eligible individual for the purpose of legal adoption), d) a child for whom the eligible individual is the legal guardian, or e) a child for whom the eligible individual is legally required to provide medical coverage.

A dependent child who is a full time student will continue to be an eligible dependent until the day such dependent child reaches their twenty-third (23) birthday. School vacation periods during any calendar year which interrupt but do not terminate what otherwise would have been a continuous course of study in that calendar year shall be considered part of school attendance on a full time student basis.

If an unmarried, dependent child, upon reaching age nineteen (19), is totally disabled and resides with the eligible individual, such dependent child will continue to be an eligible dependent under the policy until such time as the dependent child is no longer totally disabled or coverage under the policy terminates for any reason.

The individual will be required to provide DDAR with written evidence of a dependent child's disability or student status.

The enrollment for coverage is subject to DDAR's approval.

An individual loses coverage when applicable premium(s) are not paid/received, or at the end of the policy. Dependent(s) will lose coverage along with the individual or earlier if dependent loses his or her dependent status.

Possession of an identification card does not guarantee that the participant is eligible for benefits. Eligibility may be confirmed by calling DDAR's customer service representatives, but the card **is not a guarantee of payment.**

## LIMITATIONS
**Vision Examination and Vision Materials** - Fees charged by a Provider for services other than Vision Examination or covered Vision Materials must be paid in full by the Covered Person to the Provider. Such fees or materials are not covered under this Policy.

Benefit allowances provide no remaining balance for future use within the same Benefit Period, except for Contact Lenses benefit.

## EXCLUSIONS
Unless specific coverage is elected and paid for (see your SCHEDULE OF BENEFITS), DDAR does not pay benefits for:

a)  Benefits or services for injuries or conditions covered under Worker's Compensation or Employer's Liability laws. benefits or services available from any federal or state government agency; municipality, county, other political subdivision; or community agency; or from any foundation or similar entity.

b)  Charges for services or supplies for which no charge is made that the patient is legally obligated to pay. Charges for which no charge would be made in the absence of vision coverage.

c)  Charges for services by other than a PROVIDER.

d)  Charges by a PREFERRED PROVIDER for the completion of forms and/or submission of supportive documentation required by DDAR for a benefit determination.

e)  Fees charged by a Provider for services other than covered Vision Examination or covered Vision Materials must be paid in full by the Covered Person to the Provider.  Such fees or materials are not covered under this Policy.

f)  Benefits for services or materials started prior to the date the patient became eligible under this plan.

g)  Orthoptic or vision training, subnormal vision aids, and any associated supplemental testing; Aniseikonic lenses.

h)  Medical and/or surgical treatment of the eye, eyes, or supporting structures.

i)  Any vision examination or any corrective eyewear required by an Employer as a condition of employment and safety eyewear, unless specifically covered under the Policy.

j)  Plano (non-prescription) lenses.

k)  Non-prescription sunglasses.

l)  Two pair of glasses in lieu of bifocals.

m)  Lost or broken lenses, frames, glasses, or contact lenses will not be replaced except in the next Benefit Period when Vision Materials would next become available.

n)  Charges for services when a CLAIM is received for payment more than twelve (12) months after services are rendered.

o)  Specialized techniques that entail procedure and process over and above that which is normally adequate. Any additional fee is the patient's responsibility.

p)  Those services and benefits excluded by the rules and regulations of DDAR, including DDAR's processing policies.

q)  Procedures that do not comply with DDAR's guidelines.

r) All other benefits and services not specifically covered in the Policy and/or Schedule Of Benefits.

## CLAIMS

**Notice Of Claim.** Written notice of claim must be given: (a) within 30 days after a covered loss begins; or (b) as soon as reasonably possible after that. This notice may be given to the Claims Administrator. Notice should include the Covered Person's name and the Policy and Certificate numbers.

**Claim Forms.** When the Claims Administrator receives notice of a claim, the Claims Administrator will send the claimant claim forms within 15 days. If claim forms are not supplied within this 15-day period, a claimant may submit proof in writing, setting forth the nature and extent of the loss.

**Proof Of Loss.** Proof of loss must be furnished to the Claims Administrator within 90 days after the date of loss. The Claims Administrator will not deny or reduce a claim if it was not reasonably possible to give the Claims Administrator proof within the time allowed. In any event, the Covered Person must give the Claims Administrator proof within one (1) year after it is due unless legally incapacitated.

**Time Of Payment Of Claims.** Immediately after receiving written proof of loss, the Claims Administrator will pay all benefits then due a Covered Person.

**Payment Of Claims.** All claims will be paid to You, unless We have the obligation to pay the facility or Provider directly. However, in the event a benefit becomes payable to Your estate, the Claims Administrator may pay such benefit, up to an amount equal to $1,000, to any relative by blood or connection by marriage whom the Claims Administrator deems to be equitably entitled thereto. Payment made in good faith fully discharges Us to the extent of any payments made.

**Legal Actions.** No legal actions may be brought to recover under the Policy: (1) within 60 days after written proof of loss has been furnished as required; or (2) after three years (five years in Kansas and six years in South Carolina) from when written proof of loss is required.

**Claim Appeal Procedure.** If the Claims Administrator partially or fully denies a claim for benefits submitted by a Covered Person and he or she disagrees or does not understand the reasons for this denial, the Covered Person has the right to: (1) Request a review of the denial; (2) Review pertinent plan documents; and (3) Submit in writing, any data, documents or comments which are relevant to the Claims Administrator's review of this denial.

The Covered Person's appeal must be submitted in writing to the Claims Administrator at the address below within 180 days of receiving written notice of denial. The Claims Administrator will review all information and send written notification within 60 days of the Covered Person's request.

Attention Claims<br>
3724 North 3rd Street<br>
Phoenix, AZ 85012

### DELTA DENTAL OF ARKANSAS
### PRIVACY POLICY STATEMENT FOR INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION

Protecting your privacy is a priority of DDAR. The purpose of this statement is to help you understand how DDAR uses and protects your INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION in compliance with the Health Insurance Portability and Accountability Act of 1996 and related regulations, as amended from time to time (HIPAA).

### INFORMATION DDAR RECEIVES.
DDAR receives INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION about you from the following sources:
- a) Information you provide to DDAR in order to receive our services;
- b) Information about your transactions with us, our affiliates, or others; and,
- c) Information we receive from a PROVIDER who provides vision services to you.

### HOW INFORMATION IS USED AND DISCLOSED.
DDAR does not sell the INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION of its customers or former customers to any unaffiliated third parties. Such information is used for underwriting and processing your claim. This information is only provided to third parties under certain circumstances. The INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION DDAR collects, as described above, may be disclosed as follows:

- a) For TREATMENT, payment, and HEALTH CARE OPERATIONS as defined under HIPAA with respect to DDAR's administration of your vision BENEFITS program.
- b) For the proper management and administration of DDAR.
- c) To other companies as is necessary to process your claims. For example, claim and transactional information is transmitted to the company that processes and prints Claims statements. These companies are required by agreements to use this information only for the purpose for which it was disclosed.
- d) As REQUIRED BY LAW. For example, DDAR may be required to disclose the information described above in response to a court order or subpoena or as required by a regulatory investigation.
- e) To companies that perform marketing services on our behalf. DDAR may disclose the information DDAR collects, as described above. These companies are required by agreements to use this information only for the purpose for which it was disclosed.
- f) As necessary to prevent fraud or unauthorized use.
- g) As otherwise required or permitted by HIPAA or federal or state law without your authorization.

### HOW INFORMATION IS PROTECTED.
DDAR maintains and implements all physical, electronic, and procedural safeguards that comply with federal regulations to guard your INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION and to prevent its use or DISCLOSURE other than as described above.

POLICY – Individual Vision
April 2008
Form No DDARIN-17

## GENERAL PROVISIONS

**ENTIRE POLICY - CHANGES.** The POLICY, including the SCHEDULE OF BENEFITS and any endorsements or amendments issued by DDAR, make up the entire POLICY between the parties. No agent has authority to change this POLICY or waive any of its provisions. No change in this POLICY will be valid unless made by written amendment signed by an Officer of DDAR. Verbal approval(s) of coverage and/or BENEFITS shall not modify this agreement in any way and are invalid and void of no effect.

**SEVERABILITY.** If any part of this POLICY or any amendment is found to be illegal, void, or not enforceable, all other portions will remain in full force and effect until cancelled as provided by the POLICY.

**CONFORMITY WITH STATE LAWS.** The laws of the State of Arkansas will govern this POLICY. Any part of this POLICY, which, on its EFFECTIVE DATE, conflicts with the laws of Arkansas is amended to conform to the minimum requirements of such laws.

**LEGAL ACTIONS.** No action at law or in equity will be brought before sixty (60) days after proof of loss has been filed as required by this POLICY, nor prior to the completion of all administrative remedies. Any action must be brought within three (3) years from the time proof of loss is required by this POLICY. In any case, action may only be brought after a PARTICIPANT has exercised all the review and appeal rights and completed all administrative remedies under this POLICY.

**CHOICE OF JURISDICTION.** All litigation related to the terms or conditions of this POLICY will be in a court of valid jurisdiction in Pulaski County, Arkansas.

**CONFLICTS.** The terms of the POLICY, along with any amendments or endorsements issued by DDAR will in all cases be controlling. Should the wording of the POLICY, along with any amendments or endorsements issued by DDAR conflict with the SCHEDULE OF BENEFITS, ENROLLMENT, or proposal, the POLICY, along with any amendments or endorsements issued by DDAR will govern.

**RIGHT TO RECOVERY.** Whenever BENEFITS greater than the maximum amount of allowable BENEFITS are provided, DDAR will have the right to recover any excess. DDAR will recover the excess from any persons, insurance companies, or other organizations involved to whom the payment was made. Any PARTICIPANT covered under the POLICY will execute and deliver any necessary documents and do what is necessary to secure such rights to DDAR.

**ENDORSEMENTS/AMENDMENTS.** The POLICY is only subject to amendment when in writing and signed by both parties. Nothing contained in any endorsement shall affect any of the conditions, provisions, or limitations of the POLICY except as expressly provided in the endorsement. All conditions, provisions, and limitations of the POLICY shall apply to any endorsement if they are not in conflict. This POLICY may be amended or canceled by agreement between DDAR and POLICY HOLDER.

**SUBCONTRACTOR(S) AND AGENT(S).** DDAR may subcontract certain functions or appoint an agent or agents to act on DDAR'S behalf. The agent(s) may fulfill expressed, limited duties under this POLICY. Such agent(s) have no authority to change or amend this document.

**DDAR LIABILITY.** DDAR shall have no liability for any wrongful conduct of any third parties. This includes but is not limited to tortuous conduct, negligence, wrongful acts or omissions, or any other

act of any person. This includes but is not limited to DENTISTs, vision assistants, vision hygienists, vision employees, hospitals, or hospital employees receiving or providing services. DDAR shall also have no liability for any services, equipment, or facilities.

**RIGHT TO INFORMATION.** In order for Claims to be approved, DDAR, upon its request, shall be entitled to receive from any attending or examining PROVIDER or from hospitals in which a Provider's care is rendered certain information and records. This data will relate to the attendance to, examination of, or TREATMENT rendered to a PARTICIPANT. DDAR, at its own expense, shall have the right but not the duty to cause any PARTICIPANT to be examined when and so often as it reasonably requires. The receipt of any PARTICIPANT of any service constitutes the consent of such PARTICIPANT to the release to DDAR of all such information and records. The PARTICIPANT shall execute a medical release as requested by DDAR.

**MISREPRESENTATIONS.** All statements made by the ELIGIBLE INDIVIDUAL are deemed representations and warranties.

**NOTICE TO INDIVIDUALS.** Pursuant to the Gramm-Leach-Bliley Act (GLB) and Regulation 74 enacted by the Arkansas Insurance Department, DDAR shall provide notice to its customers about its privacy policies and practices. Notice will be made upon an Individual's accepted application in the plan and annually thereafter for the duration of the term of coverage.

**GRACE PERIOD.** A grace period of thirty (30) days will be granted for the payment of each premium falling due after the first premium during which grace period the policy shall continue in force. If premiums are not paid within thirty-one (31) days after they become due and payable this POLICY is terminated as of the date on which the premiums were due and payable.

**REINSTATEMENT.** If any renewal premium is not paid within the time granted the insured for payment, a subsequent acceptance of premium by DDAR or by an agent authorized by the POLICY HOLDER to accept such premium, without requiring in connection therewith an application for reinstatement, shall reinstate the policy; provided however, that if DDAR or such agent requires an application for reinstatement and issues a conditional receipt for the premium tendered, the premium will be reinstated upon approval of such application by DDAR, or lacking such approval, upon the forty-fifth day following the date of such conditional receipt unless DDAR has previously notified the POLICY HOLDER in writing of its disapproval of such application. The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than ten (10) days after such date. In all other respects, the POLICY HOLDER and DDAR shall have the same rights there under as they had under the policy immediately before the due date of the defaulted premium, subject to any provisions enjoyed hereon or attached hereto in connection with the reinstatement. Any premium accepted in connection with a reinstatement shall be applied to a period for which premium has not been previously paid, but not to any period more than sixty (60) days prior to the date of reinstatement. To reinstate the POLICY DDAR for non payment of premium DDAR will require a payment in the amount equal to the annual premium for the policy

**TIME LIMIT ON CERTAIN DEFENSES.** After three (3) years from the date of issue of this POLICY, no misstatements, except fraudulent misstatements, made by the applicant in the application for such POLICY shall be used to void the policy or to deny a claim for loss incurred or disability as defined in the policy commencing after the expiration of such three (3) year period.

**REFUND OF UNEARNED PREMIUMS UPON DEATH OF INSURED.** Upon the death of the POLICY HOLDER, the proceeds payable to the insured or his or her estate under this POLICY, shall in include premium for any period beyond the end of the policy month in which the death occurred. Unearned premium shall be paid in lump sum on a date not later than thirty (30) days after the proof of the insured's death has been furnished to DDAR.

**FRAUD NOTICE.** Any person who knowingly presents a false or fraudulent CLAIM for payment of a loss or benefit or knowingly presents false information in an APPLICATION for insurance is guilty of a crime and may be subject to fines and confinement in prison.



PO Box 15965
North Little Rock, AR 72231
(501) 835-3400
(800) 462-5410
www.deltadentalar.com

If we at Delta Dental of Arkansas fail to provide you with reasonable and adequate service, feel free to contact:

Arkansas Insurance Department
Consumer Services Division
1200 West Third Street
Little Rock, AR 72201-1904
(501) 371-2640
(800) 852-5494

POLICY – Individual Vision
April 2008
Form No. DDARIN-17

## NOTICE OF ADMINISTRATOR'S CAPACITY

PLEASE READ: This notice advises insured persons of the identity and relationship among the administrator, the policyholder and the insurer:

1. Delta Dental of Arkansas has, by agreement, arranged for Avesis Third Party Administrators, Inc. to provide administrative services for your insurance plan. As administrator, Avesis Third Party Administrators, Inc. may be authorized to market, underwrite, bill and collect premiums, process claims payment, and perform other services, according to the terms of its agreement with the insurance company. Avesis Third Party Administrators, Inc. is not the insurance company or the policyholder.

2. The policyholder is the entity to whom the insurance policy has been issued. The policyholder is identified on either the face page or schedule page of the policy or certificate.

3. Delta Dental of Arkansas is liable for the funds to pay your insurance claims.

If Avesis Third Party Administrators, Inc. is authorized to process claims for the insurance company, we will do so promptly. In the event there are delays in claims processing, you will have no greater rights to interest or other remedies against Avesis Third Party Administrators, Inc. than would otherwise be afforded to you by law.

DELTA DENTAL OF ARKANSAS

BY:   *Ed Choate*

President

If we at Delta Dental of Arkansas fail to provide you with reasonable and adequate service, feel free to contact:

Arkansas Insurance Department
Consumer Services Division
1200 West Third Street
Little Rock, AR   72201-1904
(501) 371-2640
(800) 852-5494

ELECTRONICALLY FILED
2015-Feb-05  10:48:20
60CV-15-409
C06D06 · 2 Pages

# EXHIBIT B



**Walmart**
Save money. Live better.

( 501 ) 985 - 8731
MANAGER CHRIS COLEMAN
2000 JOHN HARDEN DR
JACKSONVILLE AR 72076
ST# 0024 OP# 00000620 TE# 9B TR# 04846
**SUSPEND ITEMS FOLLOW**
ORDER NUMBER 1223810
ZEISS POLY   068113182982H      112.50 X
ZEISS POLY   068113182982H      112.50 X
ROLL  POLISH 007874222771H
   2 AT  1 FOR     5.00        10.00 X
LENS PROCFEE 007874220699H      10.00 X
      **SUSPEND ITEMS COMPLETE**
              SUBTOTAL   245.00
      TAX 1  9.000 %        22.05
   AVESIS        AMOUNT     25.00-
              TOTAL    242.05
         VISA TEND   242.05

ACCOUNT #     **** **** **** 1222  S
APPROVAL # 012043
REF # 310200672001
TRANS ID - 0003102734792322
VALIDATION - 27W7
PAYMENT SERVICE - E
TERMINAL # MX767848

       04/12/13      16:24:63

         CHANGE DUE     0.00

# ITEMS SOLD 5

TC# 4340 0608 9607 0214 8984 8



Ask a Pharmacy Sales Associate how you
   can save money on pet medications!
       04/12/13     16:24:53

       ***CUSTOMER COPY***

**Walmart** Vision Center
( EPPS, LESLIE )
Wal*Mart Vision Center
JACKSONVILLE   (501) 985-0801
Assoc: SANDRA N.
TRAY # 01058
Due Date: 04/19/2013
THANKS FOR CHOOSING
WAL*MART VISION CENTERS

ELECTRONICALLY FILED
2015-Feb-05 10:48:20
60CV-15-409
C06D06 : 2 Pages

# EXHIBIT C

Run Date: 05/17/13

# Explanation of Benefits

Carrier#:  40793
Group#:   INDDAR01V
Plan#:    976

Wal-Mart Stores, Inc
Bank of America P.O. BOX 60982
St Louis, MO63160-0982

Patient Name:  Leslie Epps
Birth Date:
Claim #:   2013126547068

Provider #:  VAR000173
Provider:  Wal-Mart Stores, Inc
2000 JOHN HARDEN DRIVE
JACKSONVILLE, AR 72076

| Procedure Code | Date Of Service | Submitted Amount | Copay Amount | Amount Paid | Paid Date | Check Number | EOB Code |
|---|---|---|---|---|---|---|---|
| V2020 | 04/12/2013 | $.75 | $25.00 | $.00 | 05/16/2013 | 1892792 | |
| V2781 | 04/12/2013 | $50.00 | $.00 | $50.00 | 05/16/2013 | 1892792 | |
| V2784 | 04/12/2013 | $125.00 | $.00 | $30.00 | 05/16/2013 | 1892792 | |
| V2750 | 04/12/2013 | $50.00 | $.00 | $.00 | 05/16/2013 | 1892792 | |
| V2702 | 04/12/2013 | $10.00 | $.00 | $.00 | 05/16/2013 | 1892792 | |
| V2799 | 04/12/2013 | $10.00 | $.00 | $.00 | 05/16/2013 | 1892792 | |

Procedure Code Description:
V2020       Frame
V2781       Progressive Lens
V2784       POLYCARB - Aspheric
V2750       Standard AR
V2702       RIMLESS GROOVE
V2799       Frame Dispensing

Delta Dental of Arkansas underwrites the benefits for the above claim.

ELECTRONICALLY FILED
2015-Feb-05  10:48:20
60CV-15-409
C06D06 : 2 Pages

# EXHIBIT D



Save money. Live better.

```
          Walmart
    MANAGER CHRIS COLEMAN
      ( 501 ) 986 - 8731
        JACKSONVILLE, AR
ST# 0024 OP# 00001249 TE# 98 TR# 07616
    **SUSPEND ITEMS FOLLOW**
      ORDER NUMBER 1216811
MENS OPT FRM 080543063030H     58.00 X
LENS       068113177632H        89.50 X
LENS       068113177632H        89.50 X
    **SUSPEND ITEMS COMPLETE**
             SUBTOTAL          237.00
        TAX 1   9.000 %          21.33
      AVISIS    AMOUNT          72.00-
                TOTAL          186.33
          VISA  TEND           186.33

ACCOUNT # 3833
APPROVAL # 866012
TRANS ID - 000100366    1434
VALIDATION - KK7R
PAYMENT SERVICE - E
          CHANGE DUE       0.00
```

# ITEMS SOLD 3

TC# 0933 6002 9284 5031 3627 2

```
We gladly accept valid
manufacturer & internet coupons
   01/03/11      12:32:48
    ***CUSTOMER COPY***
```

Walmart Vision Center

EPPS, WILLIAM
Wal*Mart Vision Center
JACKSONVILLE   (501) 985-0801
Assoc: CHARLOTTE B.
TRAY # 01088
Due Date: 01/10/2011
THANKS FOR CHOOSING
WAL*MART VISION CENTERS

ELECTRONICALLY FILED
2015-Feb-05  10:48:20
60CV-15-409
C06D06 : 2 Pages

# EXHIBIT E

Run Date: 04/23/13

## Explanation of Benefits

Carrier#: 40793
Group#: INDDAR01V
Plan#: 976

Wal-Mart Stores, Inc
Bank of America P.O. BOX 60982
St Louis, MO63160-0982

Patient Name: William Epps
Birth Date:
Claim #: 2011184136314

Provider #: VAR000173
Provider: Wal-Mart Stores, Inc
2000 JOHN HARDEN DRIVE
JACKSONVILLE, AR 72076

| Procedure Code | Date Of Service | Submitted Amount | Copay Amount | Amount Paid | Paid Date | Check Number | EOB Code |
|---|---|---|---|---|---|---|---|
| V2020 | 01/03/2011 | $58.00 | $25.00 | $27.00 | 01/27/2011 | 1539639 | |
| V2781 | 01/03/2011 | $80.00 | $.00 | $50.00 | 01/27/2011 | 1539639 | |
| V2784 | 01/03/2011 | $49.00 | $.00 | $30.00 | 01/27/2011 | 1539639 | |
| V2750 | 01/03/2011 | $50.00 | $.00 | $.00 | 01/27/2011 | 1539639 | |

Procedure Code Description:
V2020       Frame
V2781       Progressive Lens
V2784       POLYCARB - Aspheric
V2750       Standard AR

Delta Dental of Arkansas underwrites the benefits for the above claim.